[No. 15983.   Department Two.   January 10, 1921.]

G. W. CAPPS *et al., Appellants,* v. WESTERN TALC COMPANY, *Respondent.*[1]

MINES AND MINERALS (16, 17) — CONVEYANCES — LEASE.   A talc mining lease will be forfeited in accordance with the stipulation of the parties, requiring continuous operation, where the lessee did not attempt to operate the mill in any commercial sense, but only technically to comply with the requirements of the lease.

Appeal from a judgment of the superior court for Lincoln county, Sessions, J., entered January 31, 1920, dismissing an action to forfeit a lease, after a trial on the merits to the court. Reversed.

*R. M. Dye,* for appellants.

MAIN, J.—The purpose of this action was to have declared forfeited a leasehold right in certain real estate. The cause was tried to the court without a jury and resulted in a holding denying forfeiture. From the judgment dismissing the action, the plaintiffs appeal. Upon this appeal we have not been aided by any brief filed by the respondent.

The facts may be summarized as follows: The appellants, being the owners of certain real estate in Lincoln county, upon which there were deposits of talc ore, on January 12, 1907, leased the premises to one Douglas F. Smith for a period of twenty-five years and

[1]Reported in 194 Pac. 554.

as much longer as the lessee or his assigns should continue to operate in good faith and in miner-like manner the premises for the purpose of mining, milling, and removing talc therefrom. The lease was subsequently assigned to the respondent, the Western Talc Company, a corporation, and it thereupon took possession of the premises and did some prospecting during the year 1917. Under the terms of the lease, the lessee or his assigns were required, not later than April 1, 1917, to commence, in good faith and in miner-like manner, to prospect and mine for talc; on or before the first day of June, 1917, to begin the construction, upon the premises covered by the lease, of a mill for the grinding of crude talc, and to equip same with machinery of a capacity of not less than ten tons of talc per day and have the mill completed and in full operation on or before September 1, 1917.

By subsequent agreement, the time in which the lessee would have to perform the conditions just mentioned was extended one year. In other words, the things set out as required to be done during the year 1917 were not required to be done until the corresponding dates of 1918. It will be assumed that these conditions were performed, even though it may be doubtful whether the mill was, on September 1, 1918, completed and equipped in such a manner as to satisfy the requirements of the lease. There was a further provision in the lease to the effect that, when the mill was constructed and equipped, the lessee should commence to mine,

"from said premises the talc located thereon and therein and shall continue such mining in good faith and in miner-like manner continuously with a force of men, equipment and machinery sufficient to show good faith and should the party of the second part cease to mine talc from such premises or operate said mill so

constructed thereon for a period of sixty days without first securing the written consent of said first parties (appellants) then and in that event this contract shall be null and void and all payments on account of talc removed shall be forfeited to first parties as liquidated damages.''

The evidence shows that, approximately the first of September, 1918, a small amount of talc was milled. On November 20, 1918, as the respondent contends, or on the 19th, as the appellants contend, the mill was again operated and three or four hundred pounds of talc were passed through it. It was not operated again until February 18, 1919, when a few hundred pounds were milled. Whether it was again operated the last few days of March, the evidence is in dispute, the respondent claiming that it was; and the appellants, who had an equal opportunity to know facts, claiming that it was not.

The present action was begun early in April, claiming that the provisions of the lease which required that the lessee shall mine the premises for talc and shall continue such mining in miner-like manner continuously with a force of men, equipment and machinery sufficient to show good faith, were not complied with, and that the mill had not been operated as required by the terms of the lease. At the time the lease was made, the appellants had done certain development work upon the premises, and a ledge of talc rock containing probably four or five hundred tons of talc rock had been exposed. It was admitted by the manager of the respondent company that there was sufficient ore in this ledge to operate the mill for a period of two months continuously.

From the first of November, 1918, until the first of April, 1919, the respondent company employed only two miners in prospecting and development work.

Some other men were employed about the premises in building a tramway, but no other miners were employed. From the first of September, 1918, when the mill was completed until the first of April, 1919, a period of seven months, not to exceed ten or fifteen tons of talc were milled. The lease provided that, if the mill was not operated for a period of sixty days, this should be a ground of forfeiture. The evidence shows beyond controversy that the term of the lease requiring that mining operations should begin when the mill was constructed and equipped and should thereafter continue in a miner-like manner continuously with a force of men, equipment and machinery sufficient to show good faith, had not been complied with. While the mill, assuming that it was operated on the twentieth of December, 1918, instead of on the nineteenth, was not permitted to be idle for a period of sixty days, there was no attempt to operate it in the commercial sense. The only purpose of the operation was to technically comply with the requirements of the lease. The manager of the respondent company testified that the only object it had in starting and running the mill was to enable it to show that it had complied with the lease.

While forfeitures are not favored in the law, and a court of equity will be slow to declare a forfeiture, the evidence in this case shows plainly not only that the terms of the lease were not complied with, but that there was no attempt to comply with them in good faith. The parties having stipulated that, if the contract was not performed in good faith, it should be subject to forfeiture, a decree to that effect should be entered. The failure to adjudge the lease forfeited would enable the respondent to avoid its terms by a mere subterfuge.

4—114 WASH.

The judgment will be reversed and the cause remanded with directions to the superior court to enter a judgment sustaining the prayer of the complaint.

Reversed.

HOLCOMB, C. J., MITCHELL, MOUNT, and TOLMAN, JJ., concur.